Richard L. Seabolt (SBN 67469)
Terrance J. Evans (SBN 227671)
DUANE MORRIS LLP
One Market Plaza, Spear Tower
Suite 2200
San Francisco, CA  94105-1127
T:  415.957.3000
F:  415.957.3001
Email:     rlseabolt@duanemorris.com
               tjevans@duanemorris.com

Thomas T. Loder (*Pro Hac Vice*)
Sean K. Burke (*Pro Hac Vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
T:  215-979-1246/7352
F:  215-979-1020
Email:     ttloder@duanemorris.com
               sburke@duanemorris.com

Attorneys for Plaintiff
IKON OFFICE SOLUTIONS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO

| | |
|---|---|
| IKON OFFICE SOLUTIONS, INC., | Case No.:  2:10-cv-01704-WBS-EFB (TEMP) |
| Plaintiff, | **IKON OFFICE SOLUTIONS, INC.'S OPPOSITION TO DEFENDANT CHRISTY FRIEND'S MOTION TO DISMISS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS AND BREACH OF DUTY OF LOYALTY CLAIMS STATED AGAINST HER IN THE SECOND AMENDED COMPLAINT** |
| MICHAEL REZENTE and CHRISTY FRIEND, | |
| Defendants. | |
| | Date:              April 11, 2011 |
| | Time:             2:00 p.m. |
| | Courtroom:     5, 14th Floor |
| | |
| | Judge:                      Hon. William B. Shubb |
| | Complaint Filed:      September 15, 2009 |
| | FAC Filed:               November 2, 2010 |
| | SAC Filed:               December 28, 2010 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................1

    A.      Defendant Frined's Unlawful Conduct .................................................... 1

    B.      Procedural History ................................................................................. 2

III.    DISCUSSION .....................................................................................................3

    A.      Motion to Dismiss Standard.................................................................... 4

    B.      IKON's Claim for Interference with Prospective Business Relations is Valid and Plainly Not Insufficient as a Matter of Pleading. ............................... 5

        1.      IKON Has Adequately Alleged that Friend Interfered With Its Prospective Customer Relationships Concerning Which There was a Probability of Future Economic Benefit. ...................................................5

        2.      IKON has Alleged that Defendant Friend Acted Wrongfully by Deliberately Stalling Deals While Employed by IKON in Order to Divert Such Opportunities to DCSI. ...........................................................10

    C.      IKON Has Alleged Fact Sufficient to Support its Claim that Defendant Friend Breached her Duty of Employee Loyalty ............................................. 13

IV.     CONCLUSION....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*American Business Interiors, Inc. v. Haworth, Inc.*
    798 F.2d 1135 (8th Cir. 1986) ...........................................................................8

5

*American Family Ass'n, Inc. v. City & County of San Francisco*
6    277 F.3d 1114 (9th Cir. 2002) ........................................................................4, 8

7    *Amid v. Hawthorne Community Medical Group, Inc.*
    212 Cal. App. 3d 1383 (1989) ..........................................................................9
8

9    *Ashcroft v. Iqbal*
    129 S. Ct. 1937 (2009) ...................................................................................4, 7

10

*Bancroft v. Whitney Co. v. Glen*
11    411 P. 2d 921 (Cal. 1966) (en banc) ...............................................................13

12   *Blank v. Kirwan*
    39 Cal.3d 311 (Cal. App. Ct. 1985) ..................................................................6
13

14   *Bushnell Corp. v. ITT Corp.*
    973 F. Supp. 1276 (D. Kan. 1997) ..................................................................10

15

*Catch Curve, Inc. v. Venali, Inc.*
16    519 F. Supp. 2d 1028 (C.D. Cal. 2007) ............................................................5

17   *Desaigoudar v. Meyercord*
    223 F.3d 1020 (9th Cir. 2000) ...........................................................................4
18

19   *Gabriel Techs. Corp. v. Qualcomm Inc.*
    No. 08-1992, 2009 U.S. Dist. LEXIS 98379 (S.D. Cal. Sept. 3, 2009).................15

20

*Grooms v. Legge*
21    No. 09-489, 2009 U.S. Dist. LEXIS 29235 (S.D. Cal. April 8, 2009) .................6

22   *Haddock v. Board of Dental Examiners of California*
    777 F.2d 462 (9th Cir. 1985) .............................................................................4
23

24   *Hospital Building Co. v. Trustees of the Rex Hospital*
    425 U.S. 738 (1976)...........................................................................................4

25   *Kasparian* v. *County of Los Angeles*
26    38 Cal. App. 4th 242 (Cal. App. 4th 1995)........................................................6

27   *Killian Construction Co. v. Jack D. Ball & Associates*
    865 S.W.2d 889 (Mo. Ct. App. 1993)................................................................8

28

*Moore v. City of Costa Mesa*
  886 F.2d 260 (9th Cir. 1989), *cert. denied*, 496 U.S. 906 (1990)..............................................4

*NL Industries, Inc. v. Kaplan*
  792 F.2d 896 (9th Cir. 1986) ..................................................................................................4

*Octopus Prods. v. Panterra Engineered Plastics, Inc.*
  2009 U.S. Dist. LEXIS 122150 (C.D. Cal. Dec. 9 2009) ......................................................5, 8

*PostX Corp. v. Secure Data in Motion, Inc.*
  No. 02-4483, 2004 U.S. Dist. LEXIS 24260 (N.D. Cal. Nov. 20, 2004) ...............................15

*Stokes v. Dole Nut Co.*
  41 Cal. App. 4th 285 (Cal. App. 3d Dist. 1995) ....................................................................13

*United States v. Betts*
  511 F.3d 872 (9th Cir. 2007) ...........................................................................................13-14

**Statutes**

Cal. Pub. Cont. Code § 20111.............................................................................................9

Cal. Pub. Cont. Code § 20118.........................................................................................8-9

California Labor Code § 2863 ......................................................................................11-13

California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1(d).............................................3

**Other Authorities**

Restatement (Second) of Agency § 387 (1964).............................................................................13

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990) ..........4

Fed. R. Civ. P. 8(a) ....................................................................................................4

Fed R. Civ. P. 12(b)(6)..................................................................................................1, 4, 7

I.      <u>INTRODUCTION</u>

Plaintiff, IKON Office Solutions, Inc. ("IKON"), hereby files this Opposition to the Motion of Defendant, Christy Friend ("Friend"), to Dismiss the claims stated by IKON, in Plaintiff's Second Amended Complaint for "Tortious Interference with Prospective Business Relations" and "Breach of Duty of Loyalty" (Docket No. 93) (collectively the "Motion").

In her Motion, Friend contends that IKON's Second Amended Complaint ("SAC") (Docket No. 90) fails to state claims for tortious interference with prospective business relationships (Count II) or for breach of the employee duty of loyalty (Count III) and that these two counts must therefore be dismissed pursuant to Fed R. Civ. P. 12(b)(6).  As detailed below, Defendant Friend's contentions fail because:  (a) they overlook the bevy of additional allegations set forth by IKON in its SAC; and (b) they attempt to raise the applicable pleading standards far above those established under Rule 8; and (as clarified but not heightened by recent Supreme Court precedent) and, in fact, would elevate those standards to highly impractical and unwarranted levels.  Accordingly, Defendant's Motion should be denied.

II.     <u>RELEVANT FACTUAL AND PROCEDURAL BACKGROUND</u>

IKON is engaged in the business of, among other things, selling, facilitating the leasing of, and servicing office equipment and systems.  *See* SAC at ¶ 2.  Defendant Friend was an Account Executive for IKON in the Sacramento marketplace and, in that capacity, her direct responsibilities included servicing and developing current customer accounts while also identifying and obtaining new customer accounts.  *See Id*. at ¶ 23, 24.  Defendant Friend's co-Defendant in this motion, Michael Rezente ("Rezente"), was Friend's manager and direct supervisor at IKON.  *See Id*. at ¶ 3.

A.      **Defendant Friend's Unlawful Conduct**

Despite the duties she owed to IKON as an employee, Defendant Friend, through Rezente's machinations and inducement, affiliated with Delta Copy Services, Inc. ("DCSI"), a direct IKON competitor.  While still employed with IKON and up until the start of their employment with DCSI, Defendants, and especially Defendant Friend, engaged in a long running conspiracy to sabotage IKON's business and relationship with its customers.

///

1

In its SAC, IKON has averred the following known facts, facts which are either known, admitted, or based upon a well-supported information and belief, evidencing how Defendants, especially, Defendant Friend, intentionally engaged in a pattern of activity, separate and apart from her misappropriation of trade secret information, designed to undermine IKON for her own benefit and that of Rezente and DCSI:

- In the Summer of 2009, Friend resigned from IKON and joined DCSI, *See SAC* at ¶¶ 44, 45.

- Rezente and Friend solicited multiple IKON accounts and/or active sales opportunities, customers that, IKON was actively addressing and which Rezente and Friend had learned about while at IKON. *See id* at ¶¶ 48, 50.

- Within just the first few weeks of her affiliation of employment with DCSI, Friend stated, in her own Facebook posting, and separately in a conversation with an IKON employee (whom she attempted to solicit to join DCSI), that she had closed six (6) deals since joining that company and had already transacted over $100,000 in revenue for DCSI. *See id.* at ¶ 83.

- Friend's flurry of activity in her first few weeks with DCSI is in stark contrast to the lack of business Friend completed on behalf of IKON in her final few months of employment. This is despite the fact that Friend had several deals which she could have closed while at IKON, including a deal with a school district, concerning which Friend stated, in April 2009 (three months before she terminated her employment), that **_IKON would "get" she was "certain of it"_**. *See id.* at ¶ 77.

- During the weeks and/or months prior to her resignation from IKON, Friend deliberately violated her duty of loyalty to IKON by delaying and failing to conclude long term transactions for the purpose of insuring her ability, after resigning from IKON, to conclude those same transactions on behalf of herself and DCSI. *See id.* at ¶ 88.

- Further evidencing Friend's participation in a conspiracy, Defendant Rezente, Friend's supervisor at IKON, blocked the transfer of the above-referenced school district customer to another IKON representative just a few weeks before Defendant Friend suddenly resigned from IKON. *See id.* at ¶ 78

- Defendants disseminated false statements, misrepresentations, and disparaging comments about IKON's business, products and services, in an effort to unfairly divert IKON's business to DCSI. *See Id.* at ¶ 130.

## B.    Procedural History

In light of this and other information, on September 15, 2009, IKON filed a Complaint in the United States District Court for the Eastern District of Pennsylvania, pursuant to a venue selection clause in Defendants' employment agreements, seeking temporary, preliminary, and permanent injunctive relief with the Court. *See* Complaint and IKON's Motion for a Temporary Restraining

1  Order and Preliminary Injunction (Docket No. 3).  After a long dispute between the parties regarding

2  the venue issue, which included a petition for the writ of mandamus (*see* USCA June 24, 2010 Order

3  (Docket No. 43)), the Eastern District of Pennsylvania transferred the matter to this Court (Docket

4  No. 44).  Following this transfer, IKON filed its FAC on July 2, 2010 (Docket No. 45).  Several

5  weeks later, Defendants filed a Motion to Strike the First Amended Complaint (Docket No. 49).  The

6  Court denied Defendants' Motion to Strike the Amended Complaint (Docket No. 75).

7       Despite the Court's having previously ruled upon Defendants' Motion to Strike the Amended

8  Complaint, Defendants nevertheless attempted to rehash similar, if not identical, arguments to those

9  made in their Motion to Strike, by then filing a motion to dismiss (Docket Nos. 76-78).  Defendants'

10  motion to dismiss was also denied (Docket No. 85).  The Court rejected Defendants' arguments as to

11  IKON's misappropriation of trade secrets claim, holding that IKON had alleged facts sufficient to

12  survive a motion to dismiss (Docket No. 85).  While the Court granted the motion to dismiss as to

13  IKON's remaining claims for tortious interference, breach of duty of loyalty and unfair competition,

14  IKON was granted leave to amend.  IKON thereafter filed its Second Amended Complaint,

15  amending its claims for tortious inference and breach of duty of loyalty (Docket No. 90).  Again,

16  Defendant Friend, but not her co-Defendant Rezente, then filed the present motion to dismiss

17  (Docket No. 93).

18  **III.**    **DISCUSSION**

19       Defendant Friend's Motion seeks to dismiss IKON's claims for Interference with Prospective

20  Economic Relations ("Interference Claim") and Breach of Duty of Loyalty ("Duty of Loyalty

21  Claim").  With respect to IKON's Interference Claim, Friend argues that IKON has failed to (1)

22  allege any prospective relationship concerning which it had a probability of deriving any benefit; and

23  (2) allege any wrongful act outside of the interference itself.  With respect to IKON's Duty of

24  Loyalty Claim, Friend contends it should be dismissed because it: (1) is based upon acts which

25  occurred after Friend had terminated her employment with IKON, and thus no longer owed any duty

26  of loyalty to IKON; and (2) is otherwise based upon allegations related to IKON's misappropriation

27  of trade secrets claim (Count I of SAC) and thus the claim is preempted by California's Uniform

28  Trade Secrets Act, Cal. Civ. Code § 3426.1(d) ("CUTSA").

Each one of Defendant's arguments overlooks well established California law, and disregards the well-pled allegations in the SAC which clearly establish that IKON has adequately set forth its claims for relief and is entitled, finally, to take and receive basic discovery from Defendants.

### A.      Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) *admits* the well-pled allegations of the complaint but *denies* their legal sufficiency.  *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740 (1976).  While a Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint, it must be read in conjunction with Fed. R. Civ. P. 8(a), which explicitly, and economically, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990).

Accordingly, a court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989) (citations omitted), *cert. denied*, 496 U.S. 906 (1990); *See Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985) (complaint should not be dismissed if it states claim under any legal theory, even if plaintiff erroneously relies on different legal theory).

In evaluating motions to dismiss pursuant to Rule 12(b)(6), courts must read the complaint generously, accepting the truth of, and drawing all reasonable inferences from, its well-pled factual allegations.  *See American Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1126-7 (9th Cir. 2002); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  This requirement has not changed with the recent developments in Supreme Court case law, as the Supreme Court itself recognized in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), when it emphasized the need to separate legal conclusions from well-plead factual allegations, but underscored that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity."  *Id.* at 1950 (2009).

Here, IKON's SAC, which was amended to comply with the Court's December 9, 2010 Order (Docket No. 85), contains pages of specific, detailed, and fact-based allegations which

demonstrate Defendant Friend's unlawful and deceitful actions and more than adequately state claims for breach of the employee duty of loyalty and for tortious interference with prospective economic relations.  *See*, *e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D. Cal. 2007) (denying motion to dismiss tortious interference counterclaim, and reasoning: "As the notice pleading standard under the Federal Rules of Civil Procedure is liberal, the Court finds that [counterclaim defendant] will not be prejudiced if the tortious interference claim is permitted to remain."); *Octopus Prods. v. Panterra Engineered Plastics, Inc.*, 2009 U.S. Dist. LEXIS 122150, **11-12 (C.D. Cal. Dec. 9 2009) (denying motion to dismiss tortious interference claim, and holding that plaintiff sufficiently alleged facts to demonstrate probability of receiving future economic advantage).  Consistent with these decisions, Defendant's Motion should be denied.  Indeed, given that Defendant Rezente does <u>not</u> contest IKON's interference claims, and discovery will proceed with respect thereto, there is literally no benefit that could result, at this early stage, from circumscribing this particular claim (among the four claims alleged) against one defendant only.

**B.     IKON's Claim for Interference with Prospective Business Relations is Valid and Plainly Not Insufficient as a Matter of Pleading.**

Defendant Friend makes two arguments in support of her Motion to Dismiss IKON's Interference Claim: (1) that IKON has failed to allege any prospective relationship with which Friend interfered and (2) that IKON has failed to allege any wrongful conduct by Friend separate and apart from the interference itself.  As set forth in more detail below, Defendant Friend's arguments attempt to significantly raise the pleading standard and improperly relies upon arguments in which she merely contests the strength of IKON's factual allegations at the pleadings stage.  Accordingly, Defendant Friend's Motion to Dismiss IKON's Interference Claim must be denied.

1.     IKON Has Adequately Alleged that Friend Interfered With Its Prospective Customer Relationships Concerning Which There was a Probability of Future Economic Benefit.

Defendant Friend misinterprets California case law regarding the tort of interference with prospective business relations.  The very basis for the tort of tortious <u>interference with a *prospective*</u> relation is that it is "prospective."  Nevertheless, Friend argues that IKON's claim fails because

1  IKON does not adequately plead a probability of actually receiving a future economic benefit from

2  any of the customers specifically or generally identified in the SAC.

3        IKON has adequately alleged that Defendant Friend has interfered with IKON's prospective

4  or actual customers.  Despite Friend's attempt to elevate or distort the pleading requirement

5  applicable to this tort, her own cited authority makes clear that a prospective business relation only

6  requires an allegation that IKON had an economic relationship with a third party containing <u>the</u>

7  <u>*probability* of future economic benefit</u> to the plaintiff.  *See Blank v. Kirwan*, 39 Cal.3d 311 (Cal.

8  App. Ct. 1985); *Kasparian* v. *County of Los Angeles*, 38 Cal. App. 4th 242, 260 (Cal. App. 4th

9  1995).  Moreover, a claim for tortious interference with a prospective relationship can survive even

10  *without* specifically identifying the third party with whom defendants allegedly interfered.  *See*

11  *Grooms v. Legge*, No. 09-489, 2009 U.S. Dist. LEXIS 29235, at **25-28 (S.D. Cal. April 8, 2009)

12  (granting preliminary injunction where plaintiff adequately demonstrated prospective relationship

13  with future unidentified customers).

14        Here, in an attempt to mollify the concerns previously raised by Defendants in their Motion

15  to Dismiss the FAC (and although not required to do so), IKON specifically listed customers in its

16  SAC with which it already knows (without the benefit of full discovery) Defendants interfered.

17  Specifically, the SAC alleges that, while at IKON, Defendant Friend had been working on a

18  transaction with a school district for five months.  *See Id*. at ¶ 76-79.  Defendant Friend argues that

19  there was never a probability that IKON would finalize this deal.  In the first instance, however, this

20  argument is based on Friend's argument as to her version of the facts and, as such, it should be

21  properly determined at the summary judgment stage or at trial, and not in a motion to dismiss.

22  Moreover, notwithstanding its argumentative and conclusory nature, Friend's present contentions are

23  factually belied by her own actions and statements, as alleged in the SAC.  Indeed, in an email dated

24  April 16, 2009, Friend tellingly represented to IKON's Director of Sales, Kelly Mitchell that "Mike

25  [Rezente] and [her] [had] been working with the [school district] on the copier side of things for a

26  few months now," and that IKON "**would get this deal**" and that she was "**certain of it**."  *See id.* at

27  ¶ 77 (emphasis added).

28  ///

In an attempt to refute this documented factual allegation - - in which Friend herself affirmed the probability that IKON would have received this deal if not for Friend's departure - - Defendant Friend curiously classifies her statement and belief as a "legal conclusion" which is not entitled to the assumption of truth under *Twombley. See SAC* at p. 9, line 21.  Friend's argument, however, ignores the basic tenets of a 12(b)(6) Motion, is predicated upon an attack on her own credibility, and attempts to raise the holdings in *Twombley* and *Iqbal* to a new level.  Indeed, Friend's statement is not a legal conclusion, but rather factual testimony, from a defendant, in which she virtually guarantees (as the most knowledgeable point of contact to the prospective relationship) that the deal with the school district would be finalized.  Indeed, it was - - but at a new employer with no known prior connection (another fact appropriate for discovery) to the customer.  Defendant's classification of this statement attempts to extend *Twombley* and *Iqbal* to not just unsupported "legal conclusions," but also to factual conclusions.  As *Iqbal* makes clear, however, "[w]hen there are well-pleaded <u>factual allegations</u>, a court should assume their veracity."  *Iqbal* 129 S. Ct. at 1950 (emphasis added).  Accordingly, Defendant Friend's position is wholly inconsistent with Fed. R. Civ. P. 12(b)(6).

Moreover, although not necessary at this stage in the proceedings, Friend's belief that IKON would receive an economic benefit from the school district, as quoted above (SAC at ¶ 77), is not an unsupported conclusion but, rather, it is substantiated by other allegations set forth by IKON in its SAC.  First, and foremost, Friend finalized the deal for this school district as soon as she arrived at DCSI (SAC at ¶ 84) -- thus evidencing the probability that Friend could have closed this deal on behalf of IKON.  In addition, when IKON moved the school district account to another representative in the weeks prior to her resignation, Friend immediately petitioned her co-Defendant and manager Rezente to reinstate her to the account, thus creating the inference that Friend felt as though she would close the deal and/or that another IKON representative would do so - - for IKON's benefit but not her own - - if she could not continue to control the account (SAC at ¶ 78).  Ultimately, Friend did close the deal with lightning speed at DCSI, again confirming the control and ability she had to close the deal at whatever company she chose to faithfully serve.  Therefore, IKON has clearly alleged, both directly and through reasonable inferences (as the Court is required

to make in IKON's favor at this stage of the proceedings, *see American Family Ass'n, Inc.*, 277 F.3d at 1126-27) that it had a probability of receiving a future economic benefit from the school district.[1] *See Octopus Prods.*, 2009 U.S. Dist. LEXIS 122150, at **11-12 (denying motion to dismiss and holding that plaintiff sufficiently alleged facts to demonstrate probability of receiving future economic advantage).

Despite these clear and specific allegations, Defendant Friend argues that because the school district is a public entity, and, she claims, was likely subject to the public bidding requirements of California's Public Contract Code, IKON could not possibly be said to have a "probability" of closing this deal.  Once again, this raises a factual issue not supported by the record.  The California Public Contract Code recognizes numerous circumstances when a public bidding would not be required.  *See, e.g.*, Pub. Cont. Code § 20118.  Even if public bidding were required, a review of applicable case law reveals that a party can nevertheless have a reasonable expectation of receiving a business advantage (*i.e.*, even if it is still contingent upon a bidding process).  *See American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1143 (8th Cir. 1986) (in bidding situation, extensive prior relations with customer created reasonable business expectancy in supplier); *Killian Construction Co. v. Jack D. Ball & Associates*, 865 S.W.2d 889, 891 (Mo. Ct. App. 1993) (lowest responsible bidder for public project had reasonable business expectancy of receiving contract). Accordingly, even if a factual predicate had been established (which it has not), there is no bright line rule, as Defendant Friend would lead the Court to believe, that a claim for tortious interference can never arise in a public contract scenario.  Indeed, Defendant Friend does not cite to any case to support that proposition.  Accordingly, a more fact intensive inquiry is required and Friend's attempt to produce facts should be rejected as inappropriate in the context of a motion to dismiss.

*///*

---

[1] Although not specifically cited in the SAC, IKON also has in its possession several emails between Friend and the school district evidencing both parties' belief that the deal was "done".  <u>None</u> of these emails indicate in any way that the deal was one subject to a public bidding process and there is no evidence in the record that it was a public bid.  In any event, evidencing the parties' intentions are an email from the school district stating that they would like to receive IKON's proposal soon so they could "put new copiers in place over the summer", and an email from Friend to another customer stating that IKON had just saved the school district at issue over a $120,000 on their copying needs.

1    In order to properly evaluate Friend's argument, the Court would need to examine, at a

2    minimum: specific facts surrounding IKON's proposal; how close the parties were to finalizing the

3    deal; the details of their negotiations; the duration of their relationship; details regarding the other

4    bids submitted; and whether IKON was even required to submit a bid to the school district.  For

5    example, IKON and the school district may not have even contemplated a formal bidding process.

6    The California Public Contract Code permits a school district to either (a) publicly bid out any

7    contract involving expenditures of more than fifty thousand dollars ($50,000)[2] - - including for the

8    purchase of equipment, materials, or supplies to be furnished, sold or leased to a school district - -

9    and to award the contract to the lowest responsible bidder (Cal. Pub. Cont. Code § 20111); or (b)

10   avail itself of "piggybacking" upon whatever terms were negotiated by another qualifying

11   government entity.  *See* Cal. Pub. Cont. Code § 20118.  Defendant's Motion appears to ignore this

12   second possibility, *i.e.*, that IKON could have been offering the school district pricing which it had

13   previously offered to another public entity, pursuant to which any such sales proposal would have

14   been excepted from the public bidding process.  *See* Pub. Cont. Code § 20118.  Simply put, answers

15   to these fact intensive questions are not required at the motion to dismiss stage of the proceedings.

16   Instead, it is obvious from the specific allegations in the SAC—including Friend's own expression

17   of certainty that IKON would get the deal (SAC at ¶ 77), that Friend immediately finalized the deal

18   upon arriving at DCSI (SAC at ¶ 84), and her machinations to maintain control of this account when

19   IKON sought to reassign it to another IKON sales representative (SAC at ¶ 78) - - that IKON had a

20   high probability, if not a certainty, that but for Friend's actions, it would have finalized the deal with

21   the school district.[3]

22

23   [2] While the statute indicates a $50,000 threshold, in 2009, the minimum amount was increased to
     $76,700 pursuant to Cal. Pub. Cont. Code Section 20111(d), by the State Superintendent of Public

24   Instruction and was further increased, in 2010, to $78,500 and to $78,900 in 2011.  (See Office of
     Financial Accountability and Information Services Web page at http://www.cde.ca.gov/fg/ac/co/.

25   [3]  Defendant Friend represents that the case *Amid v. Hawthorne Community Medical Group, Inc.*,

26   212 Cal. App. 3d 1383, 1392 (1989) presents as an "analogous situation" to the case at hand.  IKON
     disagrees.  The court in *Amid* granted a defendant employer's demurrer -- applying more restrictive

27   state pleading standards -- as to plaintiff doctor's interference claim on the grounds that plaintiff had
     not sufficiently alleged the probability of receiving an economic benefit from future patients.  *Id*.  In
     *Amid*, plaintiff only alleged, broadly and generally, that defendant had interfered with his

28   relationship with patients that he "might evaluate in the future."  *See id*.  This general allegation is in

2.   IKON has Alleged that Defendant Friend Acted Wrongfully by Deliberately Stalling Deals While Employed by IKON in Order to Divert Such Opportunities to DCSI.

Friend next attacks IKON's Interference claim by asserting that IKON has failed to adequately allege that she engaged in any wrongful conduct separate and apart from the interference itself.  In its SAC, however, IKON directly addressed this concern, and provided detailed factual allegations describing how Friend, while still employed with IKON, acted surreptitiously and in breach of duties owed by her to IKON, by deliberately delaying and frustrating the conclusion of deals (on behalf of IKON) in order to divert IKON's goodwill and the prospective relationships involved to DCSI.

In its December 9, 2010 Order (Docket No. 85), the Court recognized that IKON had alleged that Defendants had diverted its good will, allegations which the Court held did not implicate Defendants' misappropriation of IKON trade secrets.  Nevertheless, the Court held that IKON had not adequately alleged any wrongful conduct evidencing this diversion of goodwill which was separate and apart from the interference itself.  *See* Docket No. 85 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (Cal. App. 4th 1995) (holding plaintiff "must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself") (emphasis added)).

With that framework in mind, IKON fleshed out the allegations in its SAC that Defendants, especially Friend, acted wrongfully by breaching the duty of loyalty she owed to IKON, and by purposefully withholding her best efforts to finalize (or altogether frustrating) deals available to be made on behalf of IKON, but rather stalling or subverting those deals in order to later interfere with them upon commencing employment with DCSI.  Such conduct has been recognized as an independent "wrongful" act sufficient to advance a claim for tortious interference with a prospective economic relation.  *See Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276 (D. Kan. 1997) (denying

stark contrast to the numerous allegations (SAC ¶¶ 75-79; 83-85; 87-89; 130-131) set forth by IKON in its SAC which demonstrate the high probability that IKON would have received the deal with school district (and other accounts subject to discovery) if not for Friend's deliberate interference.

1   motion to dismiss tortious interference with prospective relations claim on grounds that <u>breach of</u>

2   <u>fiduciary duty may serve as the wrongful means to sustain a tortious interference claim</u>).

3       As described in more detail below, Defendant Friend's conduct directly violated the duty of

4   loyalty owed by Defendants to IKON (and which this Court has already validated in its prior Order).

5   *See* Docket No. 85 (quoting *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (3d Dist. 1995)

6   ("during the term of employment, an employer is entitled to its employees undivided loyalty…the

7   duty of loyalty is breached…when the employee takes action which is inimical to the best interests

8   of the employer")).  The duty of loyalty recognized under California law is based on the obligation

9   of an employee to protect and pursue the interests of his or her employer, and not to advance their

10  own interest (as here) at their employer's expense or prejudice.  Section 2863 of the California Labor

11  Code, for example, provides:

12          § 2863.  <u>Preference is to be given employee's business</u>.  An employee
            who has any business to transact on his own account, similar to that
13          entrusted to him by his employer, <u>shall always give preference to the</u>
            <u>business of the employer</u> (emphasis supplied).
14

15      IKON set forth specific allegations detailing Friend's deliberate failure to finalize deals,

16  including, but not limited to, the deal with the school district, in the months prior to her termination

17  of employment with IKON.  *See* SAC at ¶¶ 76-79.  In addition, IKON further alleged that both

18  Defendants acted wrongfully by failing to disclose their conflicting interests to IKON.  *See* SAC at ¶

19  85.  As IKON alleged in its SAC, had Friend informed IKON of her conflicting interests, IKON

20  could have assigned a different representative to the school district and/or other customers serviced

21  by Defendant Friend and perhaps salvaged this relationship.  *See id*.  Instead, Friend took active

22  steps to maintain control over that account in order to advance her own interests at IKON's direct

23  expense.

24      These allegations set forth an independent and underlying wrongful basis for Defendant

25  Friend's interference with IKON's prospective economic relations.[4]  Indeed, as IKON specifically

26  summarizes in its SAC:

27  _____

28  [4]  IKON is aware that the Court previously held that IKON's allegations concerning Defendants'
    failure to finalize deals with potential customers did not amount to wrongful conduct separate from
    the interference itself.  However, the Court based that holding on the rationale that a "former

89.     Defendants' wrongful conduct in delaying or preventing finishing the deals with the school district and customer JL, and upon information and belief with other customers as well, on behalf of IKON, with the intent of closing these deals on behalf of DCSI, which they subsequently did, constitutes an intentional interference with IKON's prospective economic relations with these customers, separate and apart from their misappropriation of IKON trade secrets that Defendants used to divert and conduct such business at DCSI.  IKON had economic relationships with these customers containing the probability of future economic benefit; Defendants knew of these relationships; Defendants, through their actions, intended to disrupt and actually disrupted the relationships; and IKON suffered economic harm as a result of Defendants' actions.  In sum, Defendants "sand-bagged" the deals IKON was well on the way to completing with the school district and customer JL (and, upon information and belief, other customers) with the intention of harming IKON and benefitting Defendants' soon-to-be employer, DCSI, and Defendants succeeded in doing just that.[5]

Accordingly, such an alleged breach of a duty of loyalty is sufficient to form "the underlying independent wrongful act" required to advance a tortious interference claim.[6]

---

employee may freely use general knowledge, skills and experience acquired under a former employer so long as the employee does not use or disclose trade secrets or other confidential information."  *See* Docket No. 85.  Recognizing the Court's concern, and to add clarifying context and timeframe, IKON has since amended its SAC to include more specific information concerning how Defendants, especially Defendant Friend, acted improperly *during* their employment with IKON and *before* actually diverting the potential customers to DCSI.  Accordingly, IKON respectfully submits that the allegations it included in the SAC (¶¶ 76-79, 82-87, 89), revealing the wrongful actions Defendant Friend took while still an employee of IKON, and while owing a duty of loyalty to IKON, adequately address the Court's concerns raised in its December 9, 2010 Order.  *See also* Cal. Labor Code § 2863.

[5]  It is also important to note that, despite Defendant Friend's self serving statements to the contrary, these allegations are separate and apart from Defendant Friend's misappropriation of trade secrets.  Allegations concerning Defendant Friend's intentional sandbagging of deals have nothing to do with her misuse of IKON's trade secret information, but rather, have everything to do with her having abused her position of trust at IKON and duty to place IKON's business interests above her own.  *Id.*

[6]  Defendant Friend also raises the irrelevant argument that Defendant Friend's Confidentiality and Non-Solicitation Agreement with IKON, which IKON does not rely on at all in this action, only prevents Friend from soliciting "customers".  First, the agreement does not define "customers" and common usage of this term includes both actual and prospective customers.  Regardless, what Friend did or did not agree to in any given agreement has no bearing on a tort claim.  Indeed, as Friend concedes in the same section of her brief, a plaintiff is not allowed to "'transmute a contract claim' into tort liability."  *See* Def's Mot. to Dismiss at p. 19 lines 4-5.  Thus, using Friend's own rationale, responsibilities set forth in a contract have no applicability to IKON's interference claim, which is rooted in tort.

**C.     IKON Has Alleged Fact Sufficient to Support its Claim that Defendant Friend Breached her Duty of Employee Loyalty**

Finally, Friend's attempt to cast doubt on IKON's Breach of Duty Claim is unavailing.  First, Friend wrongly asserts that IKON bases its Duty of Loyalty Claim against Friend on conduct which occurred <u>after</u> Friend left IKON.  Second, Friend misleadingly argues that any allegations of wrong doing which occurred during her employment with IKON are interwoven with allegations forming the basis of IKON's misappropriation of trade secrets claims, and, as such, they are preempted by CUTSA.  Both of these arguments are baseless.

Under California law, "during the term of employment, an employer is entitled to its employees' undivided loyalty … [breached] when the employee takes action which is inimical to the best interests of the employer."  *See Bancroft v. Whitney Co. v. Glen*, 411 P. 2d 921 (Cal. 1966) (en banc); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 294, (Cal. App. Ct. 1985); *see generally*, Restatement (Second) of Agency § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."); Warren A. Seavey, Law of Agency § 147 (1964) ("[W]ithin the area of his employment and when not acting in the protection of a superior or equal interest, [an agent's] duty is to give single-minded attention to the principal's affairs and to subordinate personal interests, except with the principal's consent."); *see* Cal. Labor Code § 2863 (Employee with "business to transact on his own account, similar to that entrusted to him by his employer, shall always give preference to the business of the employer").  Specifically, and as applicable here, the Ninth Circuit has addressed the breadth of this duty as follows:

> [a]n employee's duty of loyalty includes a duty to act solely for the interests of his employer within the business area for which he is employed, account to the employer for money received in connection with his work, <u>and avoid undisclosed interests that might affect his conduct as an employee</u>.

*United States v. Betts*, 511 F.3d 872, 874-75 (9th Cir. 2007) (emphasis added).

First, as detailed above, the SAC sets forth numerous allegations detailing how Friend, <u>while still employed by IKON</u> and receiving paychecks from IKON, did not act solely for the interests of IKON when she deliberately stalled or frustrated with respect to deals she could have concluded on

behalf of IKON. *See* SAC at ¶¶ 75-79, 83-85, 88, 89. For example, Friend had been finalizing a deal with an area school district for months while an employee at IKON. *See id.* at ¶¶ 76, 77. On April 16, 2009, Friend stated in an email that she was "certain" IKON would get the deal. *See id.* at ¶ 77. On May 29, 2009, Friend emailed the school district stating that they had all the information necessary to make a final decision. *See id.* at ¶ 76. During this time, Friend actively led IKON to believe that she was close to finalizing the deal and blocked IKON from assigning the account to someone else. *See id.* at ¶ 78, 85. When Friend left IKON in July 2009, she still had not finalized the deal. *See id.* at ¶ 79. Conversely, upon her first few weeks at DCSI, Friend promptly finalized the deal with the school district. These allegations, at a minimum, create an inference that Friend deliberately instructed or caused the school district (and possibly others), <u>while still a trusted employee of IKON</u>, to delay concluding the available transaction until after Friend commenced employment with DCSI. Such actions and motives, taken by Friend <u>during</u> her employment with IKON, which Friend deliberately kept secret from IKON, run directly afoul of Friend's obligation to act "solely" for the interests of IKON and to avoid "undisclosed interests." *See Betts*, 511 F.3d at 874-75.

Second, and in response to these allegations, Friend attempts to argue, for the third time, that such averments are rooted in IKON's misappropriation of trade secrets claims and, therefore, preempted by CUTSA. Initially, it should be noted that the Court recognized, in its December 9, 2010 Opinion, that IKON had properly alleged the necessary facts in support of its breach of loyalty claim - - claims that are separate and apart from the allegations comprising its misappropriation of trade secrets claim.[7]

///

---

[7] The Court specifically noted that Rezente's recruitment of Friend to join DCSI was "separate and apart" from the allegations comprising IKON's misappropriation claim (Docket No. 85). Similarly, IKON has alleged facts evidencing that Friend deliberately delayed or frustrated closing deals for IKON, and these actions are likewise separate and apart from her misappropriation of confidential and trade secret information. While Friend used trade secret information to finalize these deals for DCSI, Friend separately employed improper motives and indifference in frustrating the transaction of these deals at IKON, and failing to inform IKON of her conflict, during her final months of employment at IKON. These allegations implicate her dereliction of duty and self dealing with respect to customer transactions while at IKON, and not her misappropriation of IKON trade secret information after leaving IKON's employ.

1    Moreover, Friend's argument fails because IKON's claim for breach of duty of loyalty does,

2    in fact, allege or incorporate by reference, facts that are completely separate and independent from

3    those comprising the trade secrets claim stated in Count I of the SAC.  *See PostX Corp. v. Secure*

4    *Data in Motion, Inc.*, No. 02-4483, 2004 U.S. Dist. LEXIS 24260, at **10-11 (N.D. Cal. Nov. 20,

5    2004) (holding that Uniform Trade Secrets Act only preempts alternative claims based on *same facts*

6    as misappropriation of trade secret claim) (emphasis added); *Gabriel Techs. Corp. v. Qualcomm*

7    *Inc.*, No. 08-1992, 2009 U.S. Dist. LEXIS 98379, at **34-35 (S.D. Cal. Sept. 3, 2009) ("Preemption

8    is not triggered where the facts in an independent claim are *similar to, but distinct from*, those

9    underlying the misappropriation claim") (emphasis added).

10    In this case, IKON's Duty of Loyalty Claim pertains to the time period when Friend was still

11    employed by IKON.  *See* SAC at ¶¶ 75-79, 85, 134.  Specifically, IKON alleges that Friend

12    deliberately delayed and frustrated the transaction of business on behalf of IKON, failed to disclose

13    her conflicting interest to IKON, and otherwise acted in a manner harmful to IKON (whose best

14    interests Friend was under a duty to promote) <u>during</u> the period of her employ - - transactions that

15    could and should have been concluded prior to the time Friend ever left IKON (and as to which no

16    trade secret claim would ever have arisen) had she done her duty as an IKON employee (SAC at

17    ¶ 134).  Conversely, the misappropriation of trade secrets claim is based primarily on Friend's use of

18    IKON's confidential information immediately <u>after</u> her employment with IKON.  Stated differently,

19    Friend did not need to misappropriate any of IKON's trade secrets in order to advance her plan to

20    deliberately frustrate the transaction of business she could have concluded at and on behalf of IKON.

21    Accordingly, IKON's Duty of Loyalty Claim is based on a different set of factual allegations, relates

22    to a different time period, and is of an entirely different nature than those relied upon by IKON for

23    Count I of its SAC under CUTSA.

24    Accordingly, IKON has adequately set forth a claim for breach of duty of the employee

25    loyalty against Friend.

26    **IV.   CONCLUSION**

27    At a minimum, as detailed above, IKON's SAC adequately alleges the facts necessary to

28    support its claims for breach of the employee duty of loyalty and for tortious interference based upon

1  Defendant Friend's deliberate and deceitful plan to frustrate the transaction of business on behalf of

2  IKON, and that she did so in order to immediately divert such deals to DCSI after resigning from

3  IKON.  The grounds on which Friend has sought to dismiss IKON's claims are not supported under

4  California law, nor by any fair reading of the allegations actually or implicitly contained in the SAC.

5  Accordingly, IKON respectfully requests that Defendant's Motion be denied.

6

7

8                                                         Respectfully submitted,

9                                                         DUANE MORRIS LLP

10

11  Dated:  March 18, 2011              By:       _____/s/  Terrance J. Evans_____
                                                         Richard L. Seabolt
12                                                       Terrance J. Evans
                                                         Attorneys for Plaintiff
13                                                       IKON Office Solutions, Inc.

14  DM1\2491476.3

15

16

17

18

19

20

21

22

23

24

25

26

27

28